IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00144-MR-WCM

| | |
|---|---|
| BLUE RIDGE PAPER PRODUCTS LLC, doing business as Evergreen Packaging, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> INDUSTRIAL SERVICES GROUP, INC., <br><br> Defendant. | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Remand [Doc. 6].

I.    **PROCEDURAL BACKGROUND**

On July 26, 2021, Blue Ridge Paper Products LLC d/b/a Evergreen Packaging, LLC ("Evergreen"), filed this action in state court in Haywood County, North Carolina, against Industrial Services Group, Inc., which does business as Blastco ("Blastco"); Dakota A. Baswell ("Baswell"); Terry Angel Godoy ("Godoy"); and Jose Torres Caraballo ("Caraballo"), asserting claims of breach of contract; negligence; and negligent hiring, supervision, and retention. [Doc. 1-1].

All four defendants filed motions to dismiss in state court, and the state court dismissed Caraballo [Doc. 1-15], Godoy [Doc. 1-17], and Baswell [Doc. 1-19], leaving Blastco as the only defendant in the case. On July 25, 2022, Blastco filed a Notice of Removal to federal court, alleging diversity jurisdiction under 28 U.S.C. § 1332(a).[1] [Doc. 1 at ¶¶ 14-15]. On August 8, 2022, Evergreen filed a Motion to Remand to state court, arguing that 28 U.S.C. § 1441(b)(2) prohibits removal. [Doc. 6]. Blastco filed a response to Evergreen's Motion to Remand on August 22, 2022 [Doc. 11], and Evergreen filed a Reply to Evergreen's Response on September 6, 2022 [Doc. 13]. Thus, the matter has been fully briefed and is ripe for disposition.

## II. STANDARD OF REVIEW

A defendant may remove a civil action from a state court if the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The party seeking removal has the burden to demonstrate that federal jurisdiction is proper. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Federal courts are "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." Dixon v. Coburg Dairy, Inc., 369 F.3d 811,

---

[1] There is no dispute that Evergreen and Blastco are diverse and that the amount in controversy exceeds $75,000.

816 (4th Cir. 2004) (en banc) (quoting Mulcahey, 29 F.3d at 151). Therefore, courts must "resolve all doubts in favor of remand." Strawn v. AT&T Mobility, LLC, 530 F.3d 293, 297 (4th Cir. 2008). "If federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d at 151.

## III. FACTUAL BACKGROUND

This case arises from a fire at Canton Mill in Haywood County, North Carolina. According to the Complaint, Evergreen owns and operates Canton Mill. [Doc. 1-1 at ¶ 4]. Evergreen contracted with Blastco to perform service to the "Upflow Tower" at Canton Mill. [Id. at ¶¶ 39, 43]. While Blastco employees, including Baswell, Godoy, and Caraballo, were servicing the tower, a fire broke out in the mill. [Id. at ¶¶ 14, 59]. Evergreen alleges that this fire was the result of negligence on the part of Blastco's employees. [Id. at ¶ 14]. Specifically, Evergreen alleges that a Blastco employee negligently used heat guns on flammable materials, which caused the fire. [Id.].

Two employees of Rimcor, another contractor hired to perform work on the mill, died in the fire. [Id. at ¶¶ 54, 100]. The fire caused damage throughout the mill, and Evergreen was unable to operate at full capacity for more than four months. [Id. at ¶¶ 116-20]. As a result of the structural

3

damage to the mill and the lost profits, Evergreen alleges damages in excess of $16 million. [Id. at ¶ 125].

## IV. DISCUSSION

The question before the Court is whether this case was properly removed, even though the Court has subject matter jurisdiction based on diversity. Plaintiff Evergreen is a citizen of Illinois and Delaware. Defendant Blastco is a citizen of South Carolina. The dismissed Defendants are citizens of North Carolina (Baswell), Texas (Goday) and Florida (Caraballo). As such, there has always been complete diversity between the parties. However, the case was not removable at the time of its filing because Defendant Baswell is a North Carolina citizen. Section 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought." 28 U.S.C. § 1441(b)(2). Based thereon, Evergreen moves to remand. [Doc. 11 at 2].

Defendant Blastco removed the case to this Court once Defendant Baswell, the only North Carolina citizen, was dismissed. The procedure for removing a case that was not removable as stated in the original pleadings

4

but subsequently becomes removable is set forth in 28 U.S.C. § 1446(b)(3), which states: "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Blastco argues, the state court order dismissing Baswell was an "order . . . from which it may be first ascertained that the case is one which is or has become removable." [Doc. 11 at 3].

Plaintiff Evergreen now moves to remand, arguing a common-law rule that predates § 1446(b)(3) applies to narrow § 1446(b)(3)'s applicability. This rule, known as the "voluntary-involuntary rule," operates to bar removal when a defendant who prevented removal was dismissed from the action *involuntarily*. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir. 1988). In other words, if the impediment to removability is eliminated by a voluntary act of the plaintiff (e.g., voluntary dismissal), then the case becomes removable. On the other hand, if the impediment to removability is eliminated contrary to the plaintiff's desires (e.g., order of

5

involuntary dismissal), then the action remains nonremovable as it was before.

The voluntary-involuntary rule finds its roots in Powers v. Chesapeake & O. Ry. Co., 169 U.S. 92 (1898), wherein the Supreme Court created the rule that is the precursor to § 1446(b)(3). In that case, there was no diversity of citizenship between the parties at the time of filing, but upon the plaintiff's voluntary dismissal of the non-diverse defendant jurisdiction arose and removal was allowed. Powers, 169 U.S. at 102. The distinction between voluntarily and involuntarily dismissed defendants for the purposes of removal gave birth to the voluntary-involuntary rule two years later in Whitcomb v. Smithson, 175 U.S. 635 (1900). In Whitcomb, the Court held that the action did not become removable when a directed verdict disposed of the nondiverse defendant. Id. at 637-38. The Court concluded that the directed verdict in favor of the nondiverse defendant was "adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable." Id. at 638. The Court reasoned that since the non-diverse defendant exited the case contrary to the plaintiff's wishes, the plaintiff could still appeal such dismissal, and if that non-diverse defendant were somehow returned to the case on appeal, such would thwart

6

the federal court's subject matter jurisdiction. As such, all of the federal proceedings could be rendered a nullity if jurisdiction were later divested.

The Supreme Court further developed the voluntary-involuntary distinction in the cases that followed Powers and Whitcomb. In Kansas City Suburban Belt Ry. Co. v. Herman, 187 U.S. 63 (1902), the Court applied Whitcomb and held that remand was proper when a nondiverse defendant was disposed of by demurrer at the close of the plaintiff's evidence. Herman, 187 U.S. at 65-71. In Lathrop, Shea & Henwood Co. v. Interior Construction & Improvement Co., 215 U.S. 246 (1909), the Court considered whether removal was proper after the state trial court dismissed, and the state appellate court affirmed the dismissal of, a nondiverse defendant. Lathrop, 215 U.S. at 248. The Court in Lathrop noted that "the action against the [non-diverse defendant] was not dismissed by plaintiff, but, against its contention, by the supreme court of the state" and compared such dismissal to the adverse ruling in Whitcomb. Id. at 250-51. Accordingly, the Court held that the Whitcomb principle applied and barred removal, even after the state court dismissal had become final. Id. at 251.

Until 1949, there was no statutory provision addressing the removability of a case that was not removable on the pleadings but where

grounds for removal subsequently arose. Accordingly, courts continued to rely solely on the Powers-Whitcomb framework. See Comment, The Effect of Section 1446(b) on the Nonresident's Right to Remove, 115 U. Pa. L. Rev. 264, 265-66 (1966). Then, in 1949, Congress amended § 1446(b) to add § 1446(b)(3). Act of May 24, 1949, Pub. L. No. 81-72, § 83, 63 Stat. 89, 101. The Supreme Court has not taken up the voluntary-involuntary rule since the addition of § 1446(b)(3), and courts have interpreted the interaction between the common-law rule and the statute differently. See The Effect of Section 1446(b) on the Nonresident's Right to Remove, 115 U. Pa. L. Rev. at 267-68. While the first district courts to address whether the voluntary-involuntary rule survived the addition of § 1446(b)(3) held that the statutory amendment abolished the common-law rule, every circuit court to address the issue has held that the rule survived § 1446(b)(3)'s enactment. See Poulos v. Naas Foods, Inc., 959 F.2d 69, 72 (7th Cir. 1992) (collecting cases). Courts cite the amendment's legislative history as evidence that Congress intended the rule to survive the amendment. Id. Specifically, courts cite the explanatory note for § 1446(b) contained in the House Report, which reads:

> The second paragraph of the amendment to subsection (b) is intended to make clear that the right of removal may be exercised at a later stage of the case if the initial pleading does not state a removable

8

> case but its removability is subsequently disclosed. This is declaratory of the existing rule laid down by the decisions. (See for example, Powers v. Chesapeake etc. Ry. Co., 169 U.S. 92.)

H.R. Rep. No. 81-352, at 14 (1949). Accordingly, courts concluded, Congress intended § 1446(b)(3) to incorporate common-law removal doctrine, including the voluntary-involuntary rule.[2] See Poulos, 959 F.2d at 72 (collecting cases).

The Fourth Circuit addressed the survival of the rule after the 1949 amendment in Higgins v. E.I. DuPont de Nemours Co., 863 F.2d 1162 (4th Cir. 1988). The Higgins court considered whether a suit was improperly removed after a defendant whose presence destroyed diversity was dismissed by the state court. Higgins, 863 F.2d at 1165. The Fourth Circuit stated:

> Diversity must be established at the time of removal. Even so, a case may nevertheless not be removable depending on whether the non-diverse party is eliminated from the state action by voluntary or involuntary dismissal. If the plaintiff voluntarily dismissed the state action against the non-diverse defendant, creating complete diversity, the state action may be removed because there is no risk that

---

[2] The Court notes that the decision in Powers is essentially that stated in § 1446(b)(3). The voluntary-involuntary rule arises from Whitcomb, not Powers. The legislative note, however, refers to "the existing rule laid down by the *decisions.*" Plural. The appellate decisions, to the extent they rely on the legislative history, hang their hat on this one letter "s" in decisions." A thin reed, indeed.

> diversity will be destroyed later on. The voluntary act has demonstrated the plaintiff's desire not to pursue the case against the non-diverse party. However, this is not the situation if the non-diverse party has been involuntarily dismissed by order of the state judge. The plaintiff may choose to appeal the dismissal. Although complete diversity may temporarily exist between the parties, suggesting that removal is proper, diversity jurisdiction may ultimately be destroyed if the state appellate court reverses the dismissal of the non-diverse party. Therefore, *some cases are not removable despite complete diversity between the parties.* Although disagreement exists whether the involuntary/voluntary distinction survived the 1949 amendment to § 1446, the trend appears to retain the distinction. Therefore, plaintiffs' state action may have been improperly removed.

Id. (emphasis added)(citations omitted). The Court made clear, however, that removability and subject matter jurisdiction are two different concepts. Since there was complete diversity between the parties throughout the proceedings in federal court, including at the rendition of judgment, the Court had jurisdiction notwithstanding the fact that the case had been improperly removed.

Relying on Higgins, courts in this Circuit continue to apply the voluntary-involuntary distinction. See, e.g., Drye v. Bankers Life & Cas. Co., No. 3:05CV115, 2006 WL 2077563 (W.D.N.C. Mar. 29, 2006) (state court's dismissal of nondiverse defendants did not allow remaining defendant to

10

remove to federal court); Morris v. Westbound Bank, No. DKC 10-1871, 2010 WL 3056614 (D. Md. Aug. 2, 2010) (state court's grant of summary judgment for nondiverse defendant did not allow remaining defendant to remove to federal court).

Defendant Blastco concedes that the voluntary-involuntary rule is the law of this Circuit. It argues, however, that it simply does not extend to the circumstances presented here. [Doc. 11 at 6-8]. Blastco points out that the court in Higgins specifically discussed the situation where there was no diversity at the time of the filing, but once the non-diverse defendant was involuntarily dismissed that diversity arose. Blastco contrasts that with the present situation where diversity existed from the beginning. Lack of diversity was not the impediment to removal. The case was initially non-removable because of the applicability of an entirely different rule, one that is set out in § 1441(b)(2), prohibiting removal where a defendant is a resident of the state where the plaintiff brought the action. As such, Blastco argues that the Plaintiff herein is asking this Court to apply the voluntary-involuntary rule much more broadly than is supported by either statute or precedent.

The question of whether the voluntary-involuntary rule applies only to nondiverse defendants or to all involuntarily dismissed defendants who

11

prevented removal has not been explicitly addressed by any other court.[3] And the Supreme Court has been inconsistent in its recitation of the rule—referring in at least one case to its applicability to *all* defendants who prevented removal and in others to its applicability to *nondiverse* defendants, as in Higgins. Compare Great N. Ry. Co. v. Alexander, 246 U.S. 276, 281 (1918) ("It is also settled that a case, arising under the laws of the United States, *nonremovable* on the complaint, when commenced, cannot be converted into a removable one by evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff or, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant." (emphasis added)); with Am. Car & Foundry Co. v. Kettelhake, 236 U.S. 311, 316 (1915) ("[W]here there is a joint cause of action against *defendants resident of the same state with the plaintiff* and a nonresident defendant, it must appear, to make the case a removable one

---

[3] A Pennsylvania district court recently applied the voluntary-involuntary rule in an analogous fact situation; however, the defendant in that case did not raise the argument that Blastco has raised in the present case. See Quinn v. Ethicon, No. CV 19-5462, 2020 WL 977326 (E.D. Pa. Feb. 27, 2020).

12

as to a nonresident defendant because of dismissal as to resident defendants, that the discontinuance as to such defendants was voluntary on the part of the plaintiff, and that such action has taken the resident defendants out of the case, so as to leave a controversy wholly between the plaintiff and the nonresident defendant." (emphasis added)).

Thus, it is left to this Court to resolve this inconsistency of language. Whitcomb and its progeny have never been overruled by the Supreme Court. Therefore, the Court must discern the scope of the rule as envisioned in those cases. The manner in which those cases have been applied is instructive. Various courts have demonstrated that both the interests of judicial economy and deference to the plaintiff's choice of forum underlie the voluntary-involuntary rule. See Poulos v. Naas Foods, Inc., 959 F.2d 69, 72 (7th Cir. 1992). The rule promotes judicial economy by preventing a "yo-yo effect"—an involuntary dismissal could prove to be only temporary because "the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to the state court." Id. However, preventing such an effect is not the only reason for application of the rule. Citing Lathrop, the Eleventh Circuit observed that the Supreme Court has

13

applied the rule even when the nondiverse defendant's dismissal had been affirmed and was final. See Insinga v. LaBella, 845 F.2d 249, 252-53 (11th Cir. 1988). The court in Insinga reasoned that, as the Supreme Court applied the voluntary-involuntary rule in Lathrop, where there was no possibility of a yo-yo effect, that the lack of finality could not be the only rationale for the application of the rule. Insinga, 845 F.2d at 253. As such, Lathrop and Insinga are particularly instructive. Since the rule applies even where there is no possibility of the court being divested of jurisdiction, this indicates that the Supreme Court did not envision the voluntary-involuntary rule as being a jurisdictional rule, but rather a purely procedural one. Moreover, this is consistent with Higgins, where the Court addressed the rule as being procedural rather than jurisdictional in nature.

Accordingly, courts have reasoned that deference to "a plaintiff's right, absent fraudulent joinder, to determine the removability of his case," also underlies the voluntary-involuntary rule. Id.; see also Poulos, 959 F.2d at 72; Self v. Gen. Motors Corp., 588 F.2d 655, 658 (9th Cir. 1978). The Supreme Court in Alexander also commented on the importance of deference to the plaintiff's choice of forum as underlying the rule, stating, "in the absence of a fraudulent purpose to defeat removal, the plaintiff may by the allegations of

14

his complaint determine the status with respect to removability of a case . . . this power to determine the removability of his case continues with the plaintiff throughout the litigation." Alexander, 246 U.S. at 239-40.

As such, both rationales support construing Whitcomb and the voluntary-involuntary rule as applying to all situations concerning the dismissal of a defendant who had prevented removal. Likewise, both rationales apply logically to the situation presented here. Although Baswell's dismissal has not yet been appealed, Evergreen indicates it plans to appeal when procedurally proper. [Doc. 7 at 11]. Accordingly, the defendant whose presence thwarted removal could rejoin the action, which is the precise "yo-yo" scenario that courts seek to avoid through application of the voluntary-involuntary rule.

While Blastco does not dispute that Baswell could rejoin the action if Evergreen succeeds on appeal, it argues that the "yo-yo" rationale does not support remand because the question here is merely procedural and not jurisdictional. [Doc. 11 at 7-8]. As such, Blastco argues that the presence of a forum defendant is no more than a waivable procedural defect. [Id. at 8]. Blastco's argument, however, is misplaced. Lathrop and Higgins imply that the voluntary-involuntary rule is procedural in nature, and many courts have

15

held that allowing removal where one defendant is a resident of the forum state is a procedural defect that can be waived if the plaintiff fails to object, see, e.g., Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 940 (9th Cir. 2006) (collecting cases and noting that eight[4] of the nine circuits to address the issue held that a violation of the forum defendant rule was a procedural defect). But Evergreen *has* objected to removal based on § 1441(b)(2). Accordingly, waiver is not applicable here.

Moreover, the inquiry here is not whether the Court currently has subject matter jurisdiction, as the parties do not dispute that diversity jurisdiction pursuant to § 1332 exists.[5] The question is whether it is nonetheless procedurally improper to remove the case. Here, the Court concludes that Whitcomb and Lathrop, not having been overruled, articulate a procedural rule that dictate that it is improper to allow removal when the

---

[4] The Fourth Circuit has not yet addressed this issue.

[5] Even where the presence of a nondiverse defendant was the reason removal was prevented at filing, the Court has subject matter jurisdiction after the dismissal of that defendant. See Higgins, 863 F.2d at 1166. In Higgins, the plaintiff appealed a summary judgment that was entered by the district court after a case was improperly removed following the nondiverse defendant having been involuntarily dismissed. The plaintiff argued that the court acted without jurisdiction. Id. The Fourth Circuit held that, as there was no nondiverse defendant joined *at the time the judgment was entered*, the court acted with jurisdiction. Id. Accordingly, the fact that a defendant *might* rejoin a case does not deprive the Court of jurisdiction at times when such a defendant is not joined.

16

Case 1:22-cv-00144-MR-WCM   Document 16   Filed 04/21/23   Page 16 of 18

defendant who prevented removal was dismissed contrary to the voluntary act of the Plaintiff. Therefore, the voluntary-involuntary rule is appropriately applied to prevent such a scenario.

Additionally, as explained in Alexander, absent fraudulent joinder,[6] the "power to determine the removability of his case continues with the plaintiff throughout the litigation." Alexander, 246 U.S. at 239-40. Evergreen filed a nonremovable action in state court. The Court defers to that choice of forum and concludes that remand is required.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that application of the voluntary-involuntary rule bars removal in this case, and no exception to the rule applies.

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Remand [Doc. 6] is **GRANTED**, and this case is hereby **REMANDED** to the Haywood County General Court of Justice, Superior Court Division.

---

[6] Alternatively, Blastco attempts to argue that, even if the voluntary-involuntary rule applies, removal was still proper because Baswell was fraudulently joined. [Doc. 11 at 9]. However, that argument is not timely pursuant to 28 U.S.C. § 1446(b)—it is absent from Blastco's original petition for removal and was first raised well beyond thirty days after the facts that form the basis for this argument would have become apparent to Blastco, as such facts were clearly pled in Evergreen's Complaint.

17

**IT IS SO ORDERED.**

Signed: April 21, 2023

Martin Reidinger
Chief United States District Judge

18